GEORGE W. WALKER & another *vs.* J. B. MOORS.

Suffolk.    March 21. — Sept. 5, 1878.    AMES & MORTON, JJ., absent.

On the issue whether goods were purchased by the defendant or a third person, evidence of the plaintiff that he delivered the goods on the defendant's credit is inadmissible.

On the issue whether goods were sold to the defendant or to a third person, evidence of the plaintiff, in explanation of his having at one time made a bill of the goods to the third person, is admissible.

CONTRACT upon an account annexed for the price of three furnaces. After the former decision, reported 122 Mass. 501, the case was tried in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, the material parts of which were as follows :

It was admitted that the furnaces were put into houses owned by the defendant, but it was in dispute whether they were bought by the defendant or by George W. Meserve.

The plaintiffs offered evidence tending to prove that they were manufacturers and dealers in furnaces and similar goods that they employed one Rice as a salesman, whose business it was to learn of houses in course of erection, solicit orders for

furnaces, &c., from the owners or builders, and make sales to them; that it was the duty and practice of Rice to report all sales to them for their acceptance or rejection, but that no notice of any limitation on his powers was given to the defendant or to any one else.

The plaintiffs called Rice, as a witness, who testified that the defendant ordered the furnaces of him on a certain day, and to his conversation with the defendant, during which the order was given.

Horace E. Walker, one of the plaintiffs, who was not present at the conversation between Rice and the defendant, after testifying that Rice communicated to him on the same day the defendant's order, which the plaintiffs accepted and upon which they delivered the furnaces, in reply to the question, "Upon whose credit did you deliver the goods?" answered, under the objection of the defendant, "J. B. Moors'."

The defendant offered evidence tending to show that, under an agreement in writing between Meserve and himself, Meserve finished the houses into which the furnaces were put; that all the contracts for such finishing were made and all materials and labor ordered by Meserve in his own name; that he had nothing to do with any of them; and that Meserve bought the furnaces of Rice, who was then personally indebted to him, with the understanding that they were to be set off against that account. The defendant's bookkeeper testified that, after the furnaces were set, the plaintiffs' collector presented a bill several times which was made out to Meserve, and that no bill made out to the defendant was presented until after Meserve failed to pay. On cross-examination, he testified that when the bill was presented he told the collector that the bill for the furnaces in question should be made to Meserve, and the bill was taken away; that after the furnaces were set, the collector presented a bill of the same several times to Meserve, which was made out to him; and that no bill for them was presented to the defendant until after Meserve failed to pay.

Horace E. Walker, called in rebuttal, in reply to the question, "State what you know of the bill which was made out to George W. Meserve?" answered, under the objection of the defendant, "Moors' bill, which was rendered him, was handed to me with

the request that that portion of the bill relating to the furnaces be made out to George W. Meserve. It was done so; and the bill was carried to Moors' office for Meserve;" in reply to the question, "Did you direct the bookkeeper to make it out?" he answered, "I did;" and in answer to the question, "Did you make any charge or give any credit when that new bill was made out? Did you give any credit to Meserve?" he replied, "I gave no credit to Mr. Moors, and charged nothing to George W. Meserve, and never have since to George W. Meserve."

The plaintiffs' counsel, in his closing argument to the jury, having called attention to the following clause in the agreement between Meserve and the defendant, "and should J. B. Moors enter into any engagements with regard to said property, I will save him harmless on account of same," contended that at the time of its execution the parties thereto must have contemplated that the defendant might enter into engagements similar to the one sought to be enforced in this case. The defendant requested the judge to rule that this was not the meaning and effect of the agreement. The judge declined so to instruct the jury, but instructed them, as matter of law, that the clause "covers any engagement or contract which Moors might thereafter enter into with regard to the construction of the houses, and would cover the case of furnaces ordered by him after that time."

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*R. M. Morse, Jr.*, for the defendant.

*N. Morse & C. Cobb*, for the plaintiffs.

LORD, J. The question in this case is, which one of the two parties actually purchased the three furnaces which the plaintiffs sold, and the price of which they seek to recover in this action. There is involved in it no question of original or collateral liability. When that is the question, and the defendant denies his liability, upon the ground that his engagement is a collateral engagement, and therefore necessary to be in writing to obviate the objection of the statute of frauds, it is a material inquiry whether any credit whatever was given to the party to whose promise the defendant's promise is claimed to be collateral; for if any credit whatever was thus given, the defendant's engagement would be collateral and not original. In this case, the sale

was made, not by the plaintiff himself, but by Rice, who was his agent and who testified to the facts in relation to the sale. The plaintiff had no interview with the defendant before the sale; and all the knowledge which he had upon the subject was derived from the statements made to him by Rice; and the fact that he delivered the goods upon Rice's statement was a competent fact; but upon whose credit he delivered them was not only an immaterial fact, which he could have determined only by his own construction of the language which Rice communicated to him, and incompetent, but was one which was calculated to mislead and bias the jury. Rice was bound to report to him the exact interview which he had with the defendant. If those facts created the relation of purchaser and seller between the parties, he was justified in making the delivery and claiming the price of the defendant. But his statement, that he delivered the goods upon the credit of the defendant, is merely another mode of giving his construction to language which might or might not have been sufficient to create a contract between the parties, which, under no circumstances, could be competent evidence. The language, as testified to by Rice at the trial, is claimed by the defendant to have been, if not equivocal and uncertain, insufficient to show that the defendant entered into the contract, and the plaintiffs' interpretation of that language in the absence of the defendant could only tend to his prejudice. The exception to the admission of that testimony must therefore be sustained.

A further exception is taken to the instruction of the court in relation to the legal effect of a certain agreement entered into between the defendant and one Meserve. Inasmuch as that question was raised under somewhat peculiar circumstances, and as it is not probable that in a future trial the question will again arise and be passed upon in the same language, particular criticism of the language used by the presiding judge in his construction of that contract is unnecessary. It appeared in the course of the trial that at one time a bill of these furnaces was made to Meserve, and we think that the plaintiffs were properly allowed to give their explanation of the circumstances under which the bill was thus made; and, though it is quite apparent that the bill of exceptions contains a misprint in using the word " Moors " for " Meserve," we see no objection to the question or

answer of the witness, so far as it was simply applicable to and in explanation of the bill thus made.

*Exceptions sustained.*